IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DR. WILLIAM LEAMON MADISON, : <br><br> Plaintiff, : <br> v. : <br><br> COLQUITT COUNTY SCHOOL DISTRICT, *et al.*, : <br><br> Defendants. : | CASE NO.: 7:23-CV-00031 (WLS) |

## **ORDER**

Before the Court is Defendants' Motion for Partial Dismissal (Doc. 33); and Motion to Strike and Alternative Motion for More Definite Statement (Doc. 34). For the reasons discussed below Defendants' Motions (Docs. 33 & 34) are **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.   Procedural Background

On March 20, 2023, Plaintiff Leamon Madison ("Plaintiff") filed his first Complaint (Doc. 1). He filed the Amended Complaint (Doc. 30) on January 18, 2024. Count 1 alleges a 42 U.S.C. § 1981 Retaliation claim. (Doc. 30 ¶¶ 65–75). Count 2 alleges a § 1981 Disparate Treatment claim. (*Id.* ¶¶ 76–84). Count 3 alleges a § 1983 claim for denial of Plaintiff's Fourteenth Amendment Equal Protection Clause rights. (*Id.* ¶¶ 85–90). Count 4 alleges a violation of the Georgia Open Records Act. (*Id.* ¶¶ 91–94). Count 5 alleges a Defamation claim. (*Id.* ¶¶ 95–96).

Defendants filed the instant Motions (Docs. 33 & 34) on March 4, 2024. On April 8, 2024, Plaintiff filed his Responses (Docs. 36 & 37), and Defendants filed their Replies (Docs. 40 & 41). The Motions are now fully briefed and are thus ripe for ruling.

B.   **Factual Background**[1]

Plaintiff is a former employee of the Colquitt County School District ("the District"), where he worked for seventeen years. (Doc. 30 ¶ 17). Plaintiff served as principal at Cox Elementary School from 2018 through 2021. (*Id.* ¶ 28). The "Black Lives Matter" protests, which flared up during 2020, prompted Plaintiff to send three emails to the faculty and staff at Cox Elementary School between April 2020 and July 2020 ("the 2020 emails"). (*Id.* ¶¶ 35–37). In the emails, Plaintiff expressed his strong support for the Black Lives Matter protests and his concern about police violence; and asked the faculty and staff to educate students about how to conduct themselves when interacting with law enforcement. (*Id.*)

The 2020 emails precipitated significant backlash within the District; in Plaintiff's words: he was "subjected to much revulsion and retaliation by the District administration," (Doc. 30 ¶ 38), and "Defendants engaged in making false statements against [him] including statements referring to his profession calculated to injure him." (*Id.* ¶ 43). In particular, Defendant Jon Schwalls ("Defendant Schwalls"), at the time a Colquitt County School Board candidate,[2] sent an email calling for Plaintiff's removal as principal, (*id.* ¶ 39), and made other statements that Plaintiff was "'unqualified,' 'racist,' 'bigoted' and 'incapable of leading.'" (*Id.* ¶ 38).

At some point after Defendant Schwalls's email, Defendant Superintendent Doug Howell ("Defendant Howell") met with Plaintiff to discuss the 2020 emails and informed him that several members of the School Board were "upset" about the emails and were "calling for [his] job." (Doc. 30 ¶ 41). Although it is not entirely clear, it appears Defendant Howell wrote two letters reprimanding Plaintiff for his emails, (*id.* ¶¶ 44–45), the first was sent directly to Plaintiff and "reprimand[ed] him and criticiz[ed] his performance." (*Id.* ¶ 44). And the second, "filled with false accusations[,]" was secretly placed in Plaintiff's personnel file to prevent him from responding to the allegations in the letter, and to "pad the record." (*Id.* ¶ 45).

---

[1] The facts contained herein, consistent with the standard of review for motions to dismiss, are derived from the Amended Complaint, accepted as true, and construed in the light most favorable to Plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[2] Defendant Schwalls eventually became a member of the Colquitt County School District Board. (Doc. 30 ¶ 40).

Throughout the 2020–21 school year, the backlash against Plaintiff intensified as "various white teachers became emboldened by the Board's discriminatory actions and directly spoke with Central Office administration and Board Members who encouraged [the Board's] behavior." (Doc. 30 ¶ 46) This backlash included a white teacher telling Plaintiff "we're going to lynch you." (*Id.* ¶ 47) (internal quotations removed). Plaintiff reported this threat to Defendants on March 19, 2021. (*See id.* ¶ 50). When Plaintiff spoke to the teacher who threatened to lynch him, the teacher denied making the threat and informed Plaintiff that she had been instructed by senior leadership of the District, including Defendant Howell, to "tape record" Plaintiff. (*Id.* ¶ 49). On March 22, 2021, three days after Plaintiff reported the threat of lynching, the School Board decided not to renew his contract for the 2021–22 school year. (*Id.* ¶ 50). Plaintiff was informed that he was being terminated on March 29, 2021, effective May 28, 2021, the last day of the school year. (*Id.* ¶ 51).

## II. DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

Defendants move the Court, under Fed. R. Civ. P. 12(b)(6), to partially dismiss Plaintiff's 42 U.S.C. § 1981 claim, at Count 1, and entirely dismiss Plaintiff's Georgia Open Records Act claim, at Count 4, and state-law Defamation claim, at Count 5. (Doc. 30 at 6–21). For the reasons discussed below, Defendants' Motion for Partial Dismissal is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### A. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*,

3

602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "In evaluating the sufficiency of a plaintiff's pleadings, [the Court] makes reasonable inferences in plaintiff's favor, but [the Court is] not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

### B.   Count 1: Section 1981 Retaliation Claim

Defendants move for partial dismissal of Plaintiff's § 1981 claim, at Count 1, with respect to the 2020 emails, and the threat of a teacher to lynch him. (Doc. 33 at 7–17). Section 1981 prohibits retaliation against those who complain about "the race-based violation of another person's 'contract related rights'." *E.g., Hayes v. ATL Hawks, LLC*, 844 F. App'x 171, 183 (11th Cir. 2021) (citing *Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009)). To sufficiently plead a § 1981 Retaliation claim, a plaintiff must allege (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relation between the two events. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 867 n.12 (11th Cir. 2020) (Tjoflat, J., concurring) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).

Defendants challenge the first element. "As with other statutory retaliation claims, a claim under § 1981 "requires that the protected activity involve the assertion of rights encompassed by the statute[,]" *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010), which includes the right to "make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (citing 42 U.S.C. § 1981(a)). "Thus,

4

to engage in protected activity under [§] 1981, plaintiff must complain about a race-based 'contractual injury' such as the 'violation of [a] person's contract related rights' or the 'impair[ment]' of a 'contractual relationship.'" *Posey v. Atlanta Pub. Schs.*, - - - F. Supp. 3d - - -, 2024 WL 1223474, at *3 (N.D. Ga. Mar. 21, 2024) (citing *Domino's Pizza*, 546 U.S. at 476; *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021); *ATL Hawks*, 844 F. App'x 171, 183 (11th Cir. 2021)). Although the conduct complained of need not actually violate § 1981, a plaintiff must allege that "he had a good faith, reasonable belief that the employer was engaged in unlawful . . . practices." *Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.*, 784 F. App'x 750, 752–53 (11th Cir. 2019) (citing *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008)).

   1.   **The 2020 Emails**

Defendants first contend that sending the 2020 emails was not protected activity. As alleged, Plaintiff sent three emails to faculty and staff in June and July 2020. (Doc. 30 ¶¶ 35–37). The first, sent on June 4, 2020, had the subject "These are times that test our humanity" and described Plaintiff's concern about the issues of police brutality toward racial minorities, it asked the faculty and staff to "educate all of our students on how egregious and heinous these acts are," and urged teachers to "help equip our students with the tools that are sadly necessary to survive police encounters." (*Id.* ¶ 35); (Doc. 30-2 at 2–3).[3] The second, sent on July 4, 2020, was a link to a newspaper article entitled "We Can't Talk About Racism without Understanding Whiteness" (Doc. 30-3 at 2), which was sent "as an educational tool concerning these issues of race." (*Id.* ¶ 36). And the third, sent on July 17, 2020 "encourag[ed] [faculty and staff] to maintain an encouraging and positive learning environment for students returning back to school and learning how to cope with the social unrest that was occurring relating to issues of racism and discrimination." (*Id.* ¶ 38).

---

[3] Plaintiff has attached the text of the 2020 emails to the Amended Complaint as exhibits. (Docs. 30-2, 30-3 & 30-4). In the Eleventh Circuit, "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)). Any findings the Court makes regarding the contents of those emails, however, is only for purposes of evaluating Defendants' Motion under Rule 12(b)(6). The Court makes no findings about the emails as may be ultimately determined with the benefit of discovery or on a motion for summary judgment.

Here, upon the allegations, the Court finds that when Plaintiff sent the 2020 emails he was not engaging in protected activity because those emails did not complain of any race-based contractual injury. (*See* Doc. 30 ¶¶ 35–37). Section 1981 does not offer blanket protection to all people who complain of discrimination generally, or even those who discuss race in the workplace. *See Jimenez*, 596 F.3d at 1311 (citing *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998)). Instead, it protects against retaliation for a specific type of complaint, one made against a person or entity who a plaintiff believes is engaged in unlawful discriminatory practices which specifically impact contractual rights. *See Butler*, 536 F.3d at 1213. General opposition to discrimination is simply insufficient. *Wilmore-Cochran v. Wal-Mart Assocs.*, 919 F. Supp. 2d 1222, 1223 (N.D. Ala. 2013) ("[A]n employee's complaint must reasonably convey that she is opposing discrimination based specifically upon race, versus some other type of discrimination or injustice generally.") (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 n.1 (11th Cir. 2001)). The Court thus finds that Plaintiff has not sufficiently alleged that when he sent the 2020 emails, he was engaging in activity that was protected within the meaning of § 1981.

Plaintiff argues that his emails "advocated for the rights of Black students to be educated on social issues affecting Black Americans[,]" which, according to him, is protected activity.[4] (Doc. 8). The Court is unpersuaded for two reasons. First, that interpretation departs nearly entirely from the text of the emails and the allegations of the Amended Complaint. As alleged, the emails provided general guidance for educators about how to address race with students, and voice generalized opposition to racial injustice. (*See e.g.*, Doc. 30 ¶ 37) ("[H]e sent another email to faculty and staff encouraging them how to maintain an encouraging and positive learning environment for students returning back to school and learning how to cope with the social unrest that was occurring relating to issues of racism and discrimination.") Plaintiff therefore substantially mischaracterizes even his own description of the 2020 emails. The Court will not adopt such a strained interpretation when unsupported by any reasonable inference from the allegations. *See Sinaltrainal*, 578 F.3d at 1260 ("In evaluating the sufficiency

---

[4] Apart from this point, Plaintiff generally, fails to engage in a meaningful way with the standards which govern § 1981 Retaliation claims in his Response. As whole, therefore, Plaintiff's argument adds little.

6

of a plaintiff's pleadings, [the Court] makes reasonable inferences in plaintiff's favor, but [the Court is] not required to draw plaintiff's inference." (internal quotation marks and citation omitted)).

Second, even to the extent that Plaintiff's allegations could be construed as advocating for his students' rights for education on racial issues, those rights are not ones that are protected by § 1981. Under § 1981, as noted, protected activity must "involve the assertion of rights encompassed by the statute[,]" *Jimenez*, 596 F.3d at 1311, which requires a plaintiff to complain of a race-based contractual injury. *Ziyadat*, 3 F.4th at 1296. The right to education on racial issues, to the extent that one exists, is not one which concerns the contractual relationships that § 1981 protects.

In sum, Plaintiff has failed to sufficiently allege that sending his 2020 emails was protected activity, and the Court is unpersuaded by his arguments to the contrary. Accordingly, Plaintiff has failed to state a § 1981 claim based on his 2020 emails. Defendants' motion to dismiss Plaintiff's § 1981 claim with respect to his 2020 emails is thus **GRANTED**. That claim with respect to those emails is, therefore, **DISMISSED-WITH-PREJUDICE**.

### 2. Lynching Threat

Defendants next contend that Plaintiff's report to the District about a teacher threatening to lynch him was not protected activity. (Doc. 33 at 14–17). In the Eleventh Circuit it is clear that a single complaint about a co-employee's racial harassment is not, by itself, sufficient to sustain a § 1981 Retaliation claim. *See Little United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (plaintiff who reported a racial epithet a co-worker directed at him eight months later did not engage in protected activity); *Wilson v. Farley*, 203 F. App'x 239, 247 (11th Cir. 2006) (plaintiff who reported a single racially insensitive comment to his employer was not engaging in statutorily protected activity), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Defendants rely on this line of authority to argue that, categorically, complaints about a co-worker's racial harassment are never protected by § 1981.[5] The Court agrees with Plaintiff that this goes too far. (*See* Doc. 39 at 12).

---

[5] Defendants rely heavily on *Moatamedi v. Beckman Coulter Inc.*, No. 08-CV-22430, 2009 WL 1490573, at *5 (S.D. Fla. May 27, 2009). However, the Court is not persuaded by the reasoning of *Moatamedi*

7

Complaints about racial harassment are not *per se* excluded from § 1981. Rather, a single complaint about racial harassment by a co-worker cannot alone give rise to an objectively reasonable belief that an employee was opposing an unlawful practice. *Little*, 103 F.3d at 959. ("[Plaintiff's] opposition to the racial remark uttered by . . . a co-worker . . . is protected conduct within the parameters of the statute only if [the co-worker's] conduct can be attributed to [his employer]."); *Wilson*, 203 F. App'x at 247 ("[W]e conclude that [plaintiff's] informal complaints that his co-worker['s] . . . conduct constituted racial discrimination were not objectively reasonable.") Thus, even in light of Defendants' authority, the inquiry is the same: has Plaintiff alleged sufficient facts to support a reasonable inference that he held a reasonable belief that he was opposing an unlawful employment practice? *See Little*, 130 F.3d at 959.

The Court finds that he has. Unlike the plaintiffs in *Little* and *Wilson*, Plaintiff does not rely on a single instance of racially discriminatory remarks by a co-worker to sustain his § 1981 Retaliation claim. Rather, Plaintiff alleges that his report of the teacher's lynching threat was only one component of his complaint about persistent racial discrimination at the District. (Doc. 33 ¶ 50) ("After reporting the threat of lynching to Defendants and complaining of ongoing race discrimination by the District, which included [its] failure to properly address this lynching threat . . . [the District] decided to non-renew [Plaintiff's contract] . . . .") In other words, the lynching threat is offered as an example of ongoing racial discrimination by the District that Plaintiff reported, not as the sole claim of protected activity for his § 1981 Retaliation claim. The Court finds that, in context, Plaintiff alleges sufficient facts that support a reasonable inference that he held an objectively reasonable belief that he was opposing an unlawful employment practice. Without the benefit of discovery, it would be premature to excise one example of discrimination offered by Plaintiff, when that example might be relevant to sustaining an overall finding about the reasonableness of Plaintiff's belief. However, Defendants may renew this objection at the summary judgment stage. Accordingly,

---

because *Little* and *Wilson* cannot hold the weight the *Moatamedi* court placed on them. *See Moatamedi*, 2009 WL 1490573, at *5.

8

Defendants' motion to dismiss Plaintiff's § 1981 claim with respect to the teacher's threat of lynching is **DENIED-WITHOUT-PREJUDICE**.[6]

### C. Count 3: Equal Protection Clause Claim

Defendants move to dismiss Plaintiff's claim under the Equal Protection Clause contending that retaliation claims are not cognizable under the Clause. (*See* Doc. 33 at 17). The Court agrees that there is no clearly established right to be free from retaliation. *Ratliff v. Dekalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995). But as Plaintiff correctly points out, he does not allege a retaliation claim under the Equal Protection Clause. (*See* Doc. 30 ¶¶ 18, 30, 35–52, 85–90). Rather, he alleges a disparate treatment claim, as evidenced by the heading above the claim, and the paragraphs describing the claim. (*See id.* ¶¶ 85–90). Thus, to the extent that Plaintiff alleges a retaliation claim under the Equal Protection Clause, Defendants' motion to dismiss that claim is **GRANTED**. However, all other aspects of Plaintiff's Equal Protection Clause claim may proceed.

### D. Count 4: Georgia Open Records Act Claim

Defendants move to dismiss Plaintiff's Georgia Open Records Act claim contending the Court lacks supplemental jurisdiction over the claim. (Doc. 33).[7] A district court may exercise supplemental jurisdiction over state law claims if they are so related to the federal claims in the action that "they form part of the same case or controversy." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 157 (1997) (citing 28 U.S.C. § 1367(a)). In determining whether a claim is part of the same case or controversy as a federal claim, a district court looks to whether the claim arises from the same facts, or involves similar occurrences, witnesses, or evidence. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994)).

---

[6] In the Reply, Defendants argue, for the first time, that the Court should dismiss the claim because § 1981 does not provide a cause of action against state actors. (Doc. 40 at 9–10). However, an argument raised in a Reply brief is not properly before the Court, *see e.g.*, *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005), and the Court will therefore not consider it.

[7] A motion to dismiss for lack of subject matter jurisdiction is more properly brought under Rule 12(b)(1), not 12(b)(6). However, the Court construes Defendants' motion as one made under Rule 12(b)(1), particularly because the Court has an obligation to examine *sua sponte* its own jurisdiction. *Deroy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020).

9

Upon the allegations, on April 12, 2021, Plaintiff sent an open records request to Defendant Howell for, *inter alia*, "all documents and records—including cell phone text messages and emails" concerning Plaintiff from the District; and certain District staff and School Board Members. (Doc. 30 ¶ 54). Plaintiff alleges that Defendants' responses to his request were deficient. (*Id.* ¶ 55).

Although the text messages and emails Plaintiff requested may be relevant to his federal claims, the determinations that must be made about Plaintiff's Georgia Open Records Act claim are distinct from Plaintiff's federal claims, as a number of district courts have found in similar cases. *See Ford v. City of Oakwood,* 905 F. Supp 1063, 1066 (N.D. Ga. 1995) (finding that the determinations relevant to plaintiff's Georgia Open Records Act claim were not related to plaintiff's underlying § 1983 free-speech employment retaliation claim); *Melinda v. DeKalb Cnty. Sch. Dist.*, No. 08-cv-1596, 2009 WL 10699686, at *8 (N.D. Ga. Oct. 13, 2009) (same); *Glover v. City of Atlanta*, No. 20-cv-04302, 2021 WL 3055267, at *9–10 (N.D. Ga. July 20, 2021) (finding that the connection between plaintiff's Georgia Open Records Act claim and § 1983 claim was too attenuated for the court to exercise supplemental jurisdiction); *GeorgiaCarry.Org, Inc. v. Metro. Atlanta Rapid Transit Auth.*, No. 09-CV-594, 2009 WL 5033444, at *10 (N.D. Ga. Dec. 14, 2009) (finding that the facts relevant to evaluating plaintiff's Georgia Open Records Act claim were not relevant to Plaintiff's § 1983 claims). The Court, therefore, finds that Plaintiff's Georgia Open Records Act claim does not form part of the same case or controversy as Plaintiff's federal claims. Accordingly, the Court declines to exercise supplemental jurisdiction over that claim. Defendants' Motion for Partial Dismissal (Doc. 23) with respect to Plaintiff's Georgia Open Records Act claim is thus **GRANTED**. That claim is **DISMISSED-WITHOUT-PREJUDICE**.[8]

### E.   Count 5: Defamation Claim

Defendants move the Court to dismiss Plaintiff's Defamation claim contending that it is barred by the applicable statute of limitations. (Doc. 33 at 6–7). Plaintiff appears to concede that the specific allegations in his complaint are time-barred. (*See* Doc. 36 at 14–15). The Court

---

[8] Because the Court has dismissed Plaintiff's claim for lack of subject matter jurisdiction, it makes no determination of the sufficiency of that claim for purposes of a Rule 12(b)(6) motion, or the ultimate merits of that claim, as might be determined on a motion for summary judgement or trial.

agrees. Under Georgia law, actions for reputational injuries must be brought within one year of when the alleged defamatory act occurs. *Brewer v. Schact*, 509 S.E.2d 378, 383 (Ga. Ct. App. 1998) (citing *Cunningham v. John J. Harte Ass'n*, 282 S.E.2d 219, 220 (Ga. Ct. App. 1981)); O.C.G.A. § 9-3-33). And Plaintiff's specific allegations refer only to events which occurred before his last day of employment on May 28, 2021—nearly two years before this action was filed. (*See* Doc. 30 ¶¶ 38–42).

Plaintiff attempts to save his claim by arguing that his generalized statements reciting the elements of a defamation claim are sufficient to allow the claim to proceed to discovery. (*See id.* at 14); (Doc. 30 ¶ 95) ("Defendants made false statements concerning [Plaintiff] harming his reputation injuring his trade, office, and profession.") However, a pleading in federal court[9] must "provide the grounds of his entitlement to relief which requires more than labels and conclusions . . . a formulaic recitation of the elements of a case of action will not do[.]" *Twombly*, 550 U.S. at 555 (cleaned up). Plaintiff's recitation of the elements of a defamation claim alone is insufficient to sustain that claim. The Court therefore finds that Plaintiff has failed to sufficiently allege a defamation claim within the relevant statutory period. Defendants' motion to dismiss Plaintiff's Defamation claim, at Count 5, is therefore **GRANTED.** The claim is **DISMISSED-WITH-PREJUDICE**.

F. **Conclusion: Defendants' Motion to Dismiss**

In sum, Defendants' Partial Motion to Dismiss (Doc. 33) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's § 1981 claim with respect to his 2020 emails, at Count 1, Plaintiff's Equal Protection Clause Retaliation claim, to the extent alleged,[10] at Count 3, and Plaintiff's Defamation claim, at Count 5, are **DISMISSED-WITH-PREJUDICE**. Plaintiff's Georgia Open Records Act claim, at Count 4 is **DISMISSED-WITHOUT-PREJUDICE**, because the Court declines to exercise supplemental jurisdiction over that claim.

---

[9] Plaintiff cites a number of Georgia cases which offer a more lenient standard than the federal one. However, it is well-established that pleadings in federal courts must conform to federal standards. *See e.g.*, *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) ("A federal court . . . will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" (quoting *Shady Grove Orthopedic Ass'n v. Allstate Ins.*, 559 U.S. 393, 398 (2010))).

[10] But, as noted, all other parts of Plaintiff's Equal Protection Clause claim may proceed. *See supra* Section II.C.

11

### III. DEFENDANTS' MOTION TO STRIKE AND ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

Defendants move the Court for an order to strike certain paragraphs from the Amended Complaint. (Doc. 30 at 1). Or, in the alternative, to issue an order requiring Plaintiff to replead his claims omitting dismissed claims and certain objectionable paragraphs. (*Id.*) For the reasons discussed below, that Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

#### A. Shotgun Pleading

Although it is somewhat unclear, it appears that Defendants move the Cout, under Rule 12(e), for a more definite statement of Plaintiff's complaint generally, arguing that the complaint violates the shotgun pleading doctrine.[11] Under Rule 12(e), "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed R. Civ. P. 12(e).

A shotgun pleading is one for which "it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). When faced with a shotgun pleading, a defendant may properly "move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 n.10 (11th Cir. 2015) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 365, 366 (11th Cir. 1996)). Such a shotgun complaint cannot satisfy Rule 8's basic requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" because "such a pleading is never plain." *Id.* When a district court receives a shotgun pleading, it should strike the complaint and instruct counsel to replead the case, because "it is not the proper function of courts in this Circuit to parse out such incomprehensible allegations." *Id.* at 1358.

Here, the Court finds that the Amended Complaint is not a shotgun pleading, and therefore ordering Plaintiff to submit a more definite statement is not warranted. Although

---

[11] In general, Defendants' Motion (Doc. 30) is somewhat muddled, leaving the Court to disentangle which arguments are made in relation to which motion.

many of the paragraphs pleaded are irrelevant, they do not render the Amended Complaint, taken as a whole, incomprehensible, given that Plaintiff clearly identifies which allegations refer to which cause of action, and none of the paragraphs Defendants object to form the basis of those causes of action. Additionally, Defendants have fair notice of the causes of action Plaintiff pursues against them, as demonstrated by the fact that Defendants were able to assemble a coherent motion to dismiss. As such, the Court finds that Plaintiff's Complaint is not "so vague or ambiguous that [Defendants] cannot reasonably prepare a response." *See* Fed R. Civ. P. 12(e). Defendants' motion for a more definite statement is accordingly **DENIED**.

### B. Motion to Strike

Defendants also move to strike paragraphs 19–27, 31–34,[12] and 60–62 under Rule 12(f), contending that they are "wholly immaterial and ha[ve] no ascertainable connection to the issues in dispute or controversy in the case." (Doc. 34 at 2). Under Rule 12(f) "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored. *West v. S. AG Carriers, Inc.*, No. 16-CV-134 (WLS), 2017 WL 10752210, at *1 (M.D. Ga. Mar. 16, 2017) (citing *Otero v. Vito*, 04CV211DF, 2005 WL 1429755, at *1 (M.D. Ga. June 15, 2005)). But a motion to strike may be justified if "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1367 (S.D. Fla. 2004) (citation and quotation marks omitted).

### 1. Paragraphs 19–27

Paragraphs 19–27 fall under the heading "Historical Significance of Colquitt County School District's Racially Discriminatory Treatment." (Doc. 30 ¶¶ 19–27). The section describes the history of school desegregation generally in the wake of *Brown v. Board of Education*, and the displacement of black educators that has occurred despite efforts of desegregation. (*Id.*) It contains material directly from Wikipedia, news websites, and contains large quotes from a secondary source. (*Id.*) These paragraphs contain no factual allegations that are specific to the present controversy, add nothing to the legal analysis, and take up nearly

---

[12] The motion asks the Court to strike "31-24" which, based on the text of the brief, the Court construes as asking to strike paragraphs 31–34.

13

five pages of the Amended Complaint. In short, Plaintiff's complaint does not require a history lesson for an adjudication of the present controversy. Accordingly, the Court finds that paragraphs 19–27 bear no possible relation to the controversy, and their inclusion may cause prejudice to Defendants. Defendants' motion to strike paragraphs 19–27 from the Amended Complaint is therefore **GRANTED**.

### 2. Paragraphs 31–34

Paragraphs 31–34 describe the purported recent history of the Black Lives Matter movement including the deaths of George Floyd, Ahmaud Arbery, and Breanna Taylor. (Doc. 30 ¶¶ 31–34). These paragraphs are a mixture of publicly available information about current events, and political commentary about those events. (*See id.*) Again, they contain no factual allegations which are specific to the present controversy and add nothing to the legal analysis relevant to that controversy. This is particularly true because the Court has dismissed Plaintiff's § 1981 claim with respect to his 2020 emails. *See supra* Section II.B.1. In short, Plaintiff's Complaint does not require a lesson or review of current events for an adjudication of the present controversy. As shown in the Amended Complaint, Plaintiff has sufficiently alleged the aspects of the movement related to the specific claims she asserts. Accordingly, the Court finds that paragraphs 31–34 bear no possible relation to the present controversy, and their inclusion may cause prejudice to Defendants. Defendants' motion to strike paragraphs 31–34 of the Amended Complaint is therefore **GRANTED**.

### 3. Paragraphs 60–62

Paragraphs 60–62 describe e-discovery practices which Plaintiff hopes the Court will adopt. (Doc. 30 ¶¶ 60–62). Although these paragraphs are of questionable relevance, particularly because the Court has declined to exercise supplemental jurisdiction over Plaintiff's Georgia Open Records Act claim, the Court does not find that they are sufficiently immaterial or potentially prejudicial to warrant striking from the Amended Complaint. Defendants' motion to strike paragraphs 60–62 is therefore **DENIED.** Additionally, discovery is governed by the Federal Rules of Civil Procedure without regard to Plaintiff's pleading otherwise.

### 4. Dismissed Claims

Defendants appear to also ask the Court to order Plaintiff to replead his claims "omitting any dismissed claims[.]" (Doc. 34 at 1). The Court construes this as a motion to strike paragraphs which form the basis of Plaintiff's dismissed claims. (*See id.*) Defendants have directed the Court to no authority, and the Court can find none, that authorizes it to require Plaintiff to replead a complaint without certain claims, merely because those claims have been dismissed. For all intents and purposes, they are, in effect, stricken by this Order. And the Court does not find that Defendants have made a sufficient showing that the paragraphs which form the basis of Plaintiff's dismissed claims should be stricken, or that Plaintiff should be ordered to replead the complaint without them. Thus, to the extent that Defendants move to strike the paragraphs that form the basis of the claims the Court has dismissed, that motion is **DENIED**.

### 5. Conclusion: Motion to Strike

In sum, the Court finds that paragraphs 19–27 and 31–34 should be stricken from the Amended Complaint, but 60–62 should not. Although granting a motion to strike is a drastic remedy, Plaintiff has devoted large portions of the Amended Complaint to include matters not necessary or relevant to adequately plead his claims. There are appropriate mediums through which to discuss history, political views, and current events, but a pleading in federal court is not one of them—as Rule 8 clearly requires. Including such matters is a waste of judicial resources and imposes significant unnecessary burdens on defendants attempting to craft a meaningful response. Accordingly, Defendants' motion to strike is **GRANTED-IN-PART** and **DENIED-IN-PART**. Paragraphs 19–27, and 31–34 are **STRICKEN** from the Amended Complaint. Plaintiff is **ORDERED** to replead the Amended Complaint without paragraphs 19–27 and 31–34, no later than fourteen (14) days from the entry of this Order.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal (Doc. 33) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's § 1981 claim with respect to his 2020 emails, at Count 1, Plaintiff's Equal Protection Clause Retaliation claim, to the extent alleged, at Count 3, and Plaintiff's Defamation claim, at Count 5, are **DISMISSED-WITH-**

15

**PREJUDICE**. Plaintiff's Georgia Open Records Act claim, at Count 4 is **DISMISSED-WITHOUT-PREJUDICE**, because the Court declines to exercise supplemental jurisdiction over that claim. As such, the only claims remaining in the action are the remainder of Plaintiff's § 1981 claim, Plaintiff's disparate treatment claim, at Count 2, and Plaintiff's Equal Protection Clause claim, at Count 3, to the extent it does not allege a retaliation claim.

Defendants' Motion to Strike and Alternative Motion for a More Definite Statement (Doc. 34) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Paragraphs 19–27 and 31–34 are **STRIKEN** from the Amended Complaint. Plaintiff is **ORDERED** to submit an amended complaint without paragraphs 19–27 and 31–34, no later than fourteen (14) days from the entry of this Order.

**SO ORDERED**, this 20th day of June 2024.

                                          **/s/ W. Louis Sands**
                                          **W. LOUIS SANDS, SR. JUDGE**
                                          **UNITED STATES DISTRICT COURT**