## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| LEAMON MADISON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:23-CV-00031 (WLS) |
| | : | |
| COLQUITT COUNTY SCHOOL | : | |
| DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### ORDER

Defendant Colquitt County School District moves to dismiss Plaintiff Leamon Madison's Third Amended Complaint. (*See generally* Doc. 56). After review, the Motion (Doc. 56) is denied. The District's substantive arguments were available, but not raised, in a previous motion to dismiss. So the Court considers only the exhaustion arguments. Still, these arguments fail. Madison's EEOC Charge was timely and his Title VII allegations are reasonably related to that Charge. With these challenges resolved, the case is ready to proceed.

### I.    BACKGROUND

Madison, a former, elementary-school principal, sues Colquitt County School District, its former superintendent, and the members of its school board, for actions leading up to his dismissal. (*See generally* Doc. 53). The lawsuit began in March 2023.

A year ago, the Court granted-in-part and denied-in-part Defendants' Partial Motion to Dismiss and Motion to Strike the First Amended Complaint. (*See generally* Doc. 42). The Court: (1) dismissed with prejudice Madison's § 1981 retaliation claim with respect to his 2020 emails, his Equal Protection Clause retaliation claim (to the extent alleged), and his defamation claim; (2) dismissed without prejudice Madison's Georgia Open Records Act claim; and (3) struck portions of the First Amended Complaint and ordered Madison to submit an amended complaint. (*Id.* at 16).

Madison filed the Third Amended Complaint (Doc. 53) in November 2024.[1] That complaint omitted the stricken material and added two Title VII claims: a disparate treatment and a retaliation claim. (*See* Doc. 53 ¶¶ 81–98). In response, Defendants filed two motions to dismiss (Docs. 56 & 57). The Individual Defendants filed a motion to dismiss (Doc. 56) on qualified immunity grounds. The Court recently denied that motion. (*See generally* Doc. 66). The District also filed the instant Motion to Dismiss (Doc. 56) on December 16, 2024. Madison filed a timely response. (Doc. 59). And the District timely replied. (Doc. 65). The District's Motion to Dismiss is thus ripe.

## II.   LAW AND ANALYSIS

### A. Standard of Review

The District moves under Federal Rule of Civil Procedure 12(b)(6) to partially dismiss the Third Amended Complaint. (Doc. 56 at 1). Rule 12(b)(6) permits a party to move to dismiss a claim because a complaint fails to state a claim upon which relief can be granted. The Court should not grant a Rule 12(b)(6) motion to dismiss unless a plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[I]f the factual allegations are not 'enough to raise a right to relief above the speculative level[,]'" the Court should dismiss that complaint. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). In other words, the allegations "must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

This standard requires the Court to conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court "make[s] reasonable inferences in Plaintiff's favor, but" need not "draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quotation marks and citation omitted), *abrogated on other*

---

[1] Madison filed the Second Amended Complaint (Doc. 43) shortly after the Court resolved the motions filed in response to Madison's First Amended Complaint. But soon after that, the Court granted Madison leave to amend. So he filed the Third Amended Complaint—the now-operative complaint.

*grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). Even though the Court accepts all allegations in the complaint as true, this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555).

### B. Allegations

As alleged, Madison is a Black, former employee of the District. (Doc. 53 ¶ 17). From 2018 through Spring 2021, Madison served as principal of Cox Elementary School. (*Id.* ¶ 28). In 2020, the Black Lives Matter protests prompted Madison to send several emails to faculty and staff. (*Id.* ¶¶ 20–22). The emails expressed Madison's strong support for the Black Lives Matter protests and his concern about police violence. (*See id.*) He also instructed faculty and staff to educate their students on how to interact with law enforcement. (*Id.*)

The emails precipitated swift backlash. In Madison's words, he was "subjected to much revulsion and retaliation by the District administration[.]" (Doc. 53 ¶ 23). Defendant Jon Schwalls, a Colquitt County School Board candidate at the time, called Madison "'unqualified,' 'racist,' 'bigoted' and 'incapable of leading.'" (*Id.* ¶ 24). Schwalls even emailed the School Board calling for Madison's removal. (*Id.*) Once Schwalls joined the Board, Defendant Superintendent Doug Howell met with Madison to discuss the Black Lives Matter emails. (*Id.*) Howell conveyed the Board's displeasure at the emails, and warned Madison that the Board was "calling for [his] job." (*Id.* ¶ 25). Even after Howell's warning, Madison objected to the Board's reaction. (*See id.* ¶ 27). Soon after, Howell sent Madison a letter "reprimanding him and criticizing his performance." (*Id.* ¶ 29).

Throughout the 2020–21 school year, the backlash intensified. Madison was the subject of "false statements" and "ongoing retaliation and further [race] discrimination[.]" (Doc. 53 ¶ 28). The Board's actions against Madison "emboldened" several White teachers. (*Id.* ¶ 31). Many spoke directly with the District administration and Board members about Madison. (*Id.* ¶ 30). And one teacher threatened Madison with lynching. (*Id.* ¶ 32).

Madison reported this threat to the District on March 19, 2021. (Doc. 53 ¶ 35). The same day, Madison and the Assistant Principal met with the teacher who threatened him. (*Id.*) When confronted, the teacher grew angry and denied threatening Madison. (*Id.* ¶ 34). The

teacher also admitted that a Board member, the assistant HR director, and Howell had instructed her to tape-record Madison. (*Id.*)

Just three days after Madison reported the lynching threat (on March 22), the Board voted not to renew Madison's contract. (Doc. 53 ¶ 35). In an apparent attempt to justify the decision, Howell "drafted a letter of directive to" Madison on March 25, "filled with false accusations." (*Id.* ¶ 30). But this time, Howell did not send the letter. (*Id.*) Instead, he placed it in Madison's personnel file to "pad the record" without Madison's knowledge. (*Id.*) On March 29, an HR representative and Howell met with Madison (*Id.* ¶ 36). They informed him that he would be terminated at the end of the school year. (*Id.*)

### C. Scope of Review

The District makes several arguments against the allegations in the Third Amended Complaint. (*See generally* Doc. 56). But the Court cannot consider many of these arguments because they were available when all Defendants filed their motion to dismiss the First Amended Complaint.[2]

Federal Rule of Civil Procedure 12(h)(2) generally requires the movant to consolidate all available defenses and objections into a single motion. For certain defenses (i.e. lack of personal jurisdiction), failure to consolidate waives the defense. Fed. R. Civ. P. 12(h)(1). A failure-to-state-a-claim defense is an exception. Fed. R. Civ. P. 12(h)(2). Still, if a party does not consolidate that defense, if available, into the initial motion to dismiss, they may not reassert it on a subsequent motion to dismiss. *PrimeLending v. First Cmty. Mortg., Inc.*, No. 1:23-CV-4402, 2024 WL 3914846, at *3 (N.D. Ga. June 21, 2024) (citing Fed. R. Civ. P. 12(h)(2)).[3]

An amended pleading may reveal a new defense to be sure. But it "does not automatically revive all defenses or objections[.]" *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194,

---

[2] For that Motion to Dismiss (Doc. 33) all Defendants, including the District, moved together. This time, the District and the Individual Defendants move separately.

[3] Instead, the party may raise it only (1) in a pleading under Rule 7(a) (e.g., an answer), (2) in a motion for judgment on the pleadings; or (3) at trial. *PrimeLending*, 2024 WL 3914846, at *3 (quoting Fed. R. Civ. P. 12(h)(2)).

1202 (11th Cir. 2011) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388 (3d ed. 2004)). Rather, a movant may raise a previously-omitted defense or objection only if the new pleading includes "new information or different allegations making it subject to a defense or objection that was not previously apparent to the movant." Wright & Miller, *supra*. § 1388.

    *1.    Section 1983 Arguments*

    Applying these principles, the Court first declines to consider the District's reformulated arguments against Madison's § 1983 claims.[4] The Third Amended Complaint differs from the First Amended Complaint (the object of Defendants' last motion to dismiss) in only two meaningful ways: Madison adds two Title VII counts, and omits the stricken material. (*See generally* Doc. 53).[5] The § 1983 claims persist unchanged. Thus, any potential challenges to Madison's § 1983 claims should have been apparent from the First Amended Complaint.

    Nevertheless, the District renews the challenge to Madison's § 1983 allegations. It now argues that Madison's complaints about the Board-members' actions are not § 1981 protected activity, and that Madison fails to sufficiently allege municipal liability. (Doc. 56 at 15–20). In other words, these arguments were available, but omitted, in Defendants' previous motion to dismiss. Hence Rule 12(h)(2) precludes those arguments.

    *2.    Title VII Arguments*

    The District also challenges the new Title VII claims. Superficially, these arguments are fresh. Yet a closer inspection reveals that only the exhaustion arguments were previously unavailable. Because the District's substantive objections to the Title VII claims were available in response to the § 1981 claims in the First Amended Complaint, the Court does not consider those objections either.

    Exhaustion was previously unavailable as a defense. Unlike Title VII, § 1981 does not require administrative exhaustion. *Price v. M & H Valve Co.*, 177 F. App'x 1, 9 (11th Cir. 2006)

---

[4] That is, Madison's § 1981 discrimination and retaliation claims; and his Equal Protection claim. He brings each under § 1983.

[5] The Third Amended Complaint also reflects minor wording changes throughout. (*See generally* Doc. 53).

(citing *Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971)). So the potential of an exhaustion defense was apparent only after Madison added the Title VII claims. Hence it is properly raised and the Court considers it.

On the other hand, the District's substantive objections to the Title VII claims were previously available. The Third Amended Complaint adds two Title VII counts: disparate treatment and retaliation. Even so, the Title VII and § 1981 claims rely on the same facts. For the retaliation claims, Madison relies on opposition to the allegedly discriminatory actions of the Board as protected activity. (Doc. 53 ¶¶ 81–91). For the disparate treatment claims, Madison alleges that he is a member of a protected class, and his termination was discriminatory. (*Id.* ¶¶ 91–98). So as a matter of factual allegations, the claims are identical.

The Title VII and § 1981 legal standards are also the same. Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329–30 (11th Cir. 1998)). Hence the Court would employ the same legal framework to analyze the District's arguments under both statutes.

The District's own arguments even betray the common aspects of the claims. For example, the District argues that Madison's objection to the allegedly discriminatory actions of the Board was not protected activity. (Doc. 56 at 15–18). This argument does not distinguish between Title VII and § 1981. (*Id.*) And for good reason, the claims are factually and legally identical. But this similarity also means that any substantive defenses to the Title VII claim were also available in response to the § 1981 claim in the First Amended Complaint.

Besides, if the Court addressed the District's Title VII substantive arguments, it would risk issuing inconsistent findings on substantively identical issues. By illustration, the Court previously found that Madison had sufficiently alleged that his report of the lynching threat was protected activity, within the meaning of § 1981. (Doc. 42 at 7–9). Now, the District argues that Madison's Title VII retaliation claim fails to allege protected activity within the meaning of Title VII. (Doc. 56 at 15–18). Yet the protected-activity standard for both claims is the same. *See Shields*, 305 F.3d at 1282. So if the Court considered the Title VII protected-activity argument, and dismissed that claim as a result, then the Court's orders would be inconsistent. One order would conclude that Madison had sufficiently alleged protected

activity within the meaning of both statutes, while another would conclude that he had not. An absurd result. To the extent the Court has discretion to consider the substantive Title VII arguments, if any, it exercises that discretion to prevent the potential for inconsistent orders.

Consequently, the Court concludes that the Title VII substantive defenses the District now raises were available in Defendants' previous Motion to Dismiss (Doc. 33). Those substantive arguments are thus barred by Rule 12(h)(2) and the Court does not consider them.

**D. Exhaustion**

Turning to the properly-raised arguments, the District moves to dismiss the Title VII claims on exhaustion grounds. After considering a modified standard of review, the Court addresses, and then rejects, each exhaustion argument.

*1.    External Documents*

Exhaustion creates a limited exception to the general standard of review on a Rule 12(b)(6) motion. Typically, the Court is limited to the "four corners of the complaint." *E.g.*, *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Yet Title VII exhaustion is a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). Under *Bryant*, the Court may "consider facts outside of the pleadings and . . . resolve factual disputes so long as (1) the factual disputes do not decide the merits and (2) the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376 (enumeration added); *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) (holding that the *Bryant* principles apply on a motion to dismiss a Title VII claim on exhaustion grounds).

The *Bryant* prongs are satisfied here. The District challenges the timeliness of Madison's EEOC complaint, as it relates to the discrimination and retaliation he alleges. (Doc. 56 at 6–11). This challenge does not implicate the merits. Further, the Parties have developed the record sufficiently. The District relies on Madison's EEOC Charge (Doc. 56-1). Madison adds context with his and the District's correspondence with the EEOC. (Docs. 59-1 & 59-2). These documents are more than sufficient to resolve the District's exhaustion challenge. Because the *Bryant* prongs are satisfied, the Court considers the external documents.

*2.    Timely EEOC Charge*

The District first asserts that Madison's EEOC Charge was untimely. (Doc. 56 at 5–7). Before suing under Title VII, a plaintiff must file a charge of discrimination with the EEOC.

*Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)). A charge is timely if filed within 180 days of the alleged discrimination. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The District claims that because the only alleged wrongful conduct in Madison's "judicial complaint occurred before March 28, 2021," he has not exhausted his Title VII claims. (Doc. 56 at 6).

For starters, the District miscalculates the statutory period. Madison filed his EEOC Charge on September 22, 2021. (Doc. 58-1 at 2). So for Madison's EEOC Charge to have been timely, it must be based on an act of discrimination after March 26, 2021—not March 28. *See Watson*, 324 F.3d at 1258. Madison alleges he learned of his termination on March 29, and that it was retaliation for protected activity and would not have occurred if he were not Black. (Doc. 53 ¶¶ 85–86). Because Madison filed his EEOC Charge within 180 days of his termination—the discriminatory act underlying his Title VII claims—those claims are not time-barred.

The District nevertheless argues that the Title VII claims are barred for two reasons. Neither is persuasive. First, the District argues that because the Board decided to terminate Madison on March 22, the discrete act of discrimination occurred before the statutory period. (Doc. 65 at 2). A discriminatory discharge, however, occurs on "the date that the parties understood the termination to be final." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002) (citing *Int'l Union of Elec. Workers, Loc. 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234 (1976)). Here, Madison couldn't have understood his termination to be final until he knew about it. He alleges that the Board decided not to renew his contract on March 22. (Doc. 53 ¶ 35). But he didn't find out until he was terminated on March 29. (*Id.* ¶ 36). Although the District may have been aware of the termination earlier, Madison only learned of it on March 29, which is during the statutory period. The actual date the District decided to terminate him makes no difference.

Second, the District argues that, if a specific act of discrimination occurred before the cutoff date, no liability attaches. To be sure, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. But Title VII does not prevent an employee from using "pre-limitations acts . . . where relevant, 'as background

evidence in support of [a] timely claim[.]'" *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1179 (11th Cir. 2005) (quoting *Morgan*, 536 U.S. at 115), *aff'd* 550 U.S. 618 (2007). Because Madison was terminated within the statutory period, his claim is timely. Background evidence of the District's pre-limitations acts doesn't change that.

      3.     *Timely EEOC Charge*

Lastly, the District contends that the Title VII discrimination claim is insufficiently related to the EEOC Charge. (Doc. 56 at 7–11). Even if an EEOC charge is timely, a lawsuit "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of [that] charge." *Gregory*, 355 F.3d at 1280 (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). Even so, courts are "extremely reluctant to allow procedural technicalities to bar [Title VII] claims." *Turner v. Orr*, 804 F.2d 1223, 1227 (11th Cir. 1986) (quoting *Sanchez*, 431 F.2d at 460–61). Hence EEOC charges are not strictly construed. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Gregory*, 355 F.2d at 1280).

When evaluating what can reasonably be expected to grow out of a charge, the facts "matter most[.]" *Patterson*, 38 F.4th at 1345. The legal theory is "far less important." *Id.* By illustration, a claim alleging "new acts of discrimination . . . as the essential basis" for judicial review is inappropriate. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). But if a civil complaint amplifies, clarifies, or more clearly focuses the allegations in an EEOC charge, that complaint is not barred. *Gregory*, 355 F.3d at 1279.

Madison's EEOC Charge (Doc. 56-1) sufficiently asserts a disparate treatment claim. In the Charge, Madison details the events he alleges in this lawsuit. (*Id.* at 2–4). This includes, his 2020 emails, the backlash from those emails, the discipline from Howell, the lynching threat, and his termination. (*Id.*) Madison checked the box indicating that he alleged race-discrimination. (*Id.*) And critically, Madison asserts that his May termination was discriminatory, the very same allegedly discriminatory act in his civil complaint. (*Id.* at 3). From this, it is reasonable to presume that the EEOC investigated the background events leading up to Madison's termination, and if that termination was, in fact, discriminatory or retaliatory.

Defendant characterizes the Charge as one sounding only in retaliation. Yet the Court's review reveals that the facts asserted sound under both theories. Discrimination and retaliation claims are often so "inextricably intertwined" that an EEOC charge relating to one would reasonably be expected to grow into an investigation into the other. *See Gregory*, 355 F.3d at 1277 (holding that an EEOC charge alleging discriminatory discharge "could have reasonably been extended to encompass a claim for retaliation"). Madison's termination and the alleged events leading up to it sound in either discrimination or retaliation (or both). (*See* Doc. 56-1 at 2–4). So a reasonable investigation into whether those circumstances evinced retaliation would tread the same ground as an investigation into whether those facts evinced discrimination.

The District even suggests the legal assertions in the Complaint must appear verbatim in the EEOC Charge. (*See* Doc. 56-1 at 2–4). Hardly. The EEOC Charge, granted, does not allege that Madison's "White counterparts . . . were not discriminated and denied such [employment] privileges." (Doc. 56 at 9) (emphasis omitted) (quoting Doc. 53 ¶ 61). Yet Title VII doesn't require Madison to meet federal pleading standards in an EEOC Charge. Instead, the facts matter most. *See Patterson*, 38 F.4th at 1345. And here, Madison's alleged facts and the discriminatory action correspond neatly with his civil complaint. Naturally, the more clearly asserted legal claims in the civil complaint clarify and amplify the Charge's claims of discrimination. But the common nucleus of facts remains the same.

Therefore, the Court concludes that the scope of Madison's Title VII discrimination claim could reasonably be expected to grow from his timely-filed EEOC Charge. Hence Madison's Title VII discrimination claim is not time-barred.

## III.    CONCLUSION

To sum up, because Rule 12(h) precludes the District's substantive arguments, the Court restricts its review to the District's exhaustion arguments. But these arguments fail. Because the act of alleged discrimination occurred within the statutory period, the Court concludes that Madison's EEOC Charge was timely filed. And Madison's Title VII discrimination claim could also reasonably be expected to grow out of that timely-filed Charge. Therefore, the District's Motion to Dismiss (Doc. 56) is **DENIED**. The next step is for

Defendants to file a responsive pleading, which they shall file no later than **Monday, June 30, 2025**.

      **SO ORDERED**, this 9th day of June 2025.

                                      **/s/ W. Louis Sands**
                                      **W. LOUIS SANDS, SR. JUDGE**
                                      **UNITED STATESDISTRICT COURT**